UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DERABIAN B. CARTHELL**, | Case No. 2:21-CV-13014-TGB |
| Petitioner, | Honorable Terrence G. Berg |
| vs. | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL** |
| **JOHN CHRISTIANSEN**,[1] | |
| Respondent. | |

Petitioner Derabian B. Carthell ("Petitioner"), a Michigan state prisoner, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. He challenges his convictions for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, second-offense felony-firearm ("felony-firearm"), Mich. Comp. Laws § 750.227b, carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227, and felon in possession of a firearm, Mich. Comp. Laws § 750.224f. Petitioner raises three claims for relief.

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases. Thus, the Court substitutes John Christiansen, the warden at the facility where Petitioner is presently incarcerated, as the Respondent.

For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I. Background

Petitioner's convictions arise from a robbery and shooting in Lansing, Michigan on November 21, 2016. On that date, Huda Townsend and Matthew Smoke drove to a medical marijuana dispensary, the Green Room, in a white rental car. ECF No. 11-11, PageID.601. Smoke was a drug dealer and planned to meet a buyer in the Green Room parking lot. *Id.* at PageID.602. Smoke told Townsend that he was waiting for one of "Cell's" friends. *Id.* After waiting for quite some time, someone Townsend later identified as Marcell Davis opened the vehicle's back door and pointed a gun at Townsend. *Id.* Petitioner, also holding a gun, pulled Smoke out of the car. *Id.* Petitioner told Townsend, "You know what time it is." *Id.* at PageID.603. Townsend, who was still seated in the car, heard Smoke say, "I gave you everything" and then heard a bang. *Id.* Petitioner and Davis pulled Townsend out of the car and took his wallet and phone. *Id.* at PageID.604. Petitioner and Davis then fled. *Id.* Smoke died from a gunshot wound to his torso. ECF No. 11-8, PageID.516.

A security camera recorded the robbery and murder. ECF No. 11-11, PageID.588.

Theolosia McCrina testified that she was Petitioner's girlfriend in November 2016. A few nights after the shooting, she mentioned to Petitioner that someone had been shot at the Green Room; he did not respond. ECF No. 11-8, PageID.500. After Petitioner was identified as a suspect, police showed McCrina some still pictures from the surveillance video outside the Green Room. She identified Petitioner as the person in the photos and began crying. ECF No. 11-7, PageID.468.

The jury convicted Petitioner of felony murder, armed robbery, felony firearm second offense, carrying a concealed weapon, and felon in possession of a firearm. On October 17, 2018, he was sentenced to life imprisonment without the possibility of parole for felony murder, 281 to 880 months for armed robbery, five years for second offense felony-firearm, 46 to 90 months for CCW, and to 36 to 90 months for being a felon-in-possession.

Petitioner filed an appeal as of right in the Michigan Court of Appeals.[2] He raised a single claim through counsel—that the trial court erred in denying a defense motion for mistrial when jurors were exposed to extraneous influences. Petitioner filed a pro se supplemental brief arguing that his convictions for felony murder and the underlying felony of armed robbery violated the Double Jeopardy Clause, and that the jury

---

[2] Petitioner and Marcell Davis were tried separately, but the Michigan Court of Appeals consolidated their appeals.

instruction and verdict form improperly lacked a "not guilty" option for second-degree murder. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Carthell*, No. 346123, 2020 WL 557565 (Mich. Ct. App. Feb. 4, 2020). The Michigan Supreme Court later denied Petitioner's application for leave to appeal. *People v. Carthell*, 506 Mich. 918, 948 N.W.2d 565 (Sept. 29, 2020).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the same claims that he presented to the state courts.

Respondent argues that Petitioner's second and third claims are procedurally defaulted. The Court is not required to address a procedural default issue before deciding against the petitioner on the merits. *Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion on the merits of Petitioner's claims.

## II.  Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an

unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124–25 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion

### A.

Petitioner's first claim concerns an incident which occurred outside the courthouse on the second day of trial. At the start of the third day of trial, Juror No. 7 informed the judge's law clerk that a car passed by her and another juror (believed to be Juror No. 5) when they were leaving the courthouse the night before and that the driver honked the horn. *See* 8/29/2018 Tr., pp. 4–5, ECF No. 11-6, PageID.413–14. Juror No. 7 thought that the car may have contained individuals who had been seated on Petitioner's side of the courtroom, though she was not certain of that. *Id.* at PageID.416. She briefly discussed the incident with Juror No. 5 and did not know whether other jurors overheard the discussion. *Id.* at PageID.417.

After discussing the issue with the parties, the trial court individually questioned each of the fourteen jurors. Each juror stated that they could be fair and impartial. *See id.* at PageID.414–20. In particular, Juror No. 7 stated that she felt she could be fair and impartial to both sides because she did not feel that "the defendant ... had anything to do with it ... [H]e's a separate person." ECF No. 11-6, PageID.417. Nevertheless, defense counsel asked for a mistrial or, alternatively, that Juror Nos. 5 and 7 be struck. *Id.* at PageID.421.

6

The trial court denied the defense's motion, finding no manifest necessity because there was "no real and substantial possibility that any outside influence will affect the jury's verdict." *Id.* at PageID.422. To err on the side of caution, the trial court determined that Juror Nos. 5 and 7 would be excused as unnecessary alternates before deliberations began. ECF No. 11-10, PageID.539. The selection would appear to be random. *Id.*

The Michigan Court of Appeals held that the trial court did not abuse its discretion in failing to declare a mistrial because "the incident was not related to a material aspect of the case and, viewed objectively, this isolated incident did not create a real and substantial possibility of affecting the jury's verdict." *Carthell*, 2020 WL 557565, at *8. The court of appeals noted that the questioning of Juror No. 5 and Juror No. 7 "did not reveal any information or circumstances that suggested that their ability to render a fair and impartial verdict had been compromised." *Id.* And, because these two jurors did not participate in deliberations, the court held "that the mere possibility of jurors having overheard a discussion about the honking incident—which even Juror No. 7 was not sure came from a supporter of Petitioner—is not sufficient proof of an extraneous influence." *Id.* at *9. Finally, the state court held that even if the deliberating jurors overheard the conversation between Juror Nos. 5 and 7, Petitioner failed to demonstrate "that it created a real and

substantial possibility of affecting the jury's verdict." *Id.*

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. The Sixth Amendment guarantees the right of criminal defendants to a fair and impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). This right imposes on the trial judge the duty to investigate allegations of external jury influences. *Remmer v. United States*, 347 U.S. 227, 229–30 (1954). If a trial court is faced with a colorable claim of an extraneous influence, it must conduct "a hearing with all interested parties permitted to participate." *Id.* at 230.

Here, in accordance with *Remmer*, the trial court undertook a careful and deliberate inquiry into the nature and circumstances of the incident. The inquiry occurred immediately after the court became aware of the incident and each juror was questioned individually. With the only two jurors known to be present for the incident excused from deliberations, there is simply no support for a finding that the jurors who decided the case were biased or affected by an extraneous influence. The trial court reasonably denied the motion for a mistrial, and the adjudication of the claim by the Michigan Court of Appeals did not contravene clearly established Supreme Court law. Therefore Petitioner is not entitled to habeas relief on this claim.

8

**B.**

Next, Petitioner claims that his convictions and sentences for felony murder and the predicate felony of armed robbery violated the Double Jeopardy Clause.

The Double Jeopardy Clause prohibits multiple criminal punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498–99 (1984). But the Double Jeopardy Clause is not violated if the state legislature intended to impose cumulative punishments when the same conduct violates two statutes. *See Volpe v. Trim*, 708 F.3d 688, 696–97 (6th Cir. 2013) (citing *Johnson*, 467 U.S. at 499 n.8). The question, therefore, is whether the Michigan Legislature intended that convictions for felony murder and the underlying predicate felony give rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S at 499 n.8. In making this determination, the court must defer to the Michigan courts' determination of the legislature's intent. *Volpe*, 708 F.3d at 697.

In *People v. Ream*, 481 Mich. 223, 750 N.W.2d 536, 546 (2008), the Michigan Supreme Court concluded that the Michigan legislature intended to authorize multiple punishments upon conviction for first-degree felony murder and the underlying felony. Because the Michigan Supreme Court has settled the question that the Michigan legislature intended to impose multiple punishments for these offenses, this "court's

9

inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S at 499 n.8. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## C.

In his third claim, Petitioner asserts that the jury verdict form violated his right to due process because it did not allow the jury to return a not-guilty verdict for second-degree murder. The jury verdict form is part of the record in this case:

**Verdict Form**

Defendant:  Derabian Carthell
Docket No:  17-110-FC

POSSIBLE VERDICTS:   You may return only one verdict on each count. Mark only one box for each count.

Count 1 (Murder):
___   Not Guilty
_X_   Guilty of First Degree Felony Murder
___   Guilty of Second Degree Murder

Count 2 (Armed Robbery):
___   Not Guilty
_X_   Guilty of Armed Robbery

Count 3 (Felony Firearm):
___   Not Guilty
_X_   Guilty of Felony Firearm

Count 4 (Carrying a Concealed Weapon):
___   Not Guilty
_X_   Guilty of Carrying a Concealed Weapon

Count 5 (Possession of a Firearm by a Felon):
___   Not Guilty
_X_   Guilty of Possession of a Firearm by a Felon

Dated:  9-5-18         *Krystle Valdovinos*
                      Foreperson

ECF No. 11-13, PageID.696.

The trial court instructed the jurors, "If you find defendant guilty of murder, you must state in your verdict whether it is first-degree felony murder or second-degree murder." *Carthell*, 2020 WL 557565, at *10.

The Michigan Court of Appeals held that the verdict form and the trial court's jury instructions complied with Michigan law and adequately conveyed to the jury that, as to count one, they could find Petitioner guilty of first-degree murder, guilty of second-degree murder, or not guilty. *Id.*

To obtain habeas relief based upon an allegedly improper verdict form, a petitioner must show that the instructions or form, taken as a whole, were "so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846–47 (6th Cir. 1997)). Petitioner fails to make this showing. The verdict form clearly indicated that for each count the jury could mark only one verdict and, for the murder charge specifically the jury could return one of three verdicts—not guilty, guilty of first-degree felony murder, or guilty of second-degree murder.

The Sixth Circuit Court of Appeals has affirmed the denial of habeas corpus relief where a petitioner challenged essentially the same verdict form used in Petitioner's case. *Meridy v. Ludwick*, No. 17-2006, 2018 WL 4191337, at *3 (6th Cir. May 21, 2018). In *Meridy*, the Sixth Circuit held that a verdict form presenting three options—not guilty,

guilty of first-degree premeditated murder, or guilty of the lesser offense of second-degree murder—did not deprive the petitioner of a fair trial because the form gave the jury the option of returning a general not-guilty verdict. *Id.*

The verdict form in this case plainly provided the jury an option to return a verdict of not guilty for the murder charge. Thus, the verdict form did not render Petitioner's trial fundamentally unfair. Habeas relief is denied on this claim.

## IV.  Conclusion

For the reasons stated above, the Court **DENIES** the Petition for a Writ of Habeas Corpus.

The Court **FURTHER FINDS** that reasonable jurists would not debate this Court's resolution of Petitioner's claims, so the Court **DENIES** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If Petitioner nonetheless chooses to appeal, he may proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

DATED: February 4, 2025

BY THE COURT:

/s/ Terrence G. Berg
TERRENCE G. BERG
United States District Judge

12